UNITED STATES DISTRICT COURT

DISTRICT OF NEVADA

\* \* \*

| | |
|---|---|
| ANDY RUSSO,<br><br>           Plaintiff,<br><br>v.<br><br>JOSEPH LOPEZ and ASTER ELEMENTS, INC.,<br><br>           Defendants.<br><br>AND RELATED CLAIMS. | 2:11-CV-00284-PMP-GWF<br><br>ORDER |

        Presently before the Court is Sierra Metals Southwest, LLC's ("Sierra Southwest") Motion to Dismiss Lopez's Third-Party Complaint (Doc. #56), filed on October 14, 2011.  Defendant/Counterclaimant Joseph Lopez ("Lopez") filed an Opposition (Doc. #60) on October 31, 2011.  Sierra Southwest filed a Reply (Doc. #66) on November 7, 2011.

        Also before the Court is Lopez's Motion to Strike Sierra Metals Southwest, LLC's Motion to Dismiss (Doc. #61), filed on October 31, 2011.  Sierra Southwest filed an Opposition (Doc. #70) on November 17, 2011.  Lopez filed a Reply (Doc. #76) on November 28, 2011.

        Also before the Court is Defendant Aster Elements, Inc.'s ("Aster") Motion to Dismiss the Amended Complaint of Plaintiff Andy Russo (Doc. #62), filed on November 1, 2011.  Plaintiff/Counterdefendant Andy Russo ("Russo") filed an Opposition (Doc. #71) on November 18, 2011.  Aster filed a Reply (Doc. #79) on November 28, 2011.

## I. BACKGROUND

In February 2007, Plaintiff Russo formed a Nevada corporation called Sierra Metals, Inc. ("Sierra Metals"), which was based in Nevada. (Am. Compl. (Doc. #45) at 2.) Russo thereafter sold a fifty-one percent interest in Sierra Metals to Defendant Lopez. (Id.) In August 2008, Sierra Metals opened an office in Mentor, Ohio. (Id.) Russo and Lopez also formed Sierra Construction Services, Inc. ("Sierra Construction"). (Id.) Russo owned forty-nine percent of Sierra Construction, and Lopez owned fifty-one percent. (Id.) Generally, Russo managed the Sierra Metals office in Nevada, and Lopez managed the Sierra Metals office in Ohio. (Id.)

The relationship between Lopez and Russo deteriorated, and in early 2010, the two started to discuss separating their business relationship. (Id. at 3.) Lopez and Russo each formed their own separate companies, with Lopez forming SMI-USA and Russo forming Sierra Southwest. (Id. at 5.) Russo and Lopez dispute the propriety of various actions taken by the other, including allegations of misappropriation of corporate funds. (Id. at 6-8; Am. Countercl. (Doc. #39).)

Russo brought suit against Lopez in Nevada state court in October 2010, asserting claims for breach of contract, breach of the implied covenant of good faith and fair dealing, declaratory relief, unjust enrichment, specific performance, equitable estoppel, injunctive relief, accounting, conversion, and breach of fiduciary duty. (Id. at 2-9.) Lopez removed the action to this Court answered and counterclaimed, asserting against Russo claims for breach of contract, breach of the implied covenant of good faith and fair dealing, declaratory relief, unjust enrichment, specific performance, injunctive relief, accounting, conversion, breach of fiduciary duty, and fraudulent misrepresentation. (Pet. for Removal (Doc. #1), Ans. & Countercl. (Doc. #4) at 20-29.)

Lopez thereafter moved to join Sierra Southwest as a required party. Russo opposed the motion, but argued that if the Court were to join Sierra Southwest, the Court

also should join Aster, a company owned by Lopez, as a required party.  This Court granted the cross motions to join Sierra Southwest and Aster.  (Order (Doc. #38).)  Lopez filed an Amended Counterclaim (Doc. #39), which asserted the same claims against Russo and added claims for unjust enrichment, injunctive relief, and conversion against Sierra Southwest.  Russo filed an Amended Complaint (Doc. #45) asserting the same claims against Lopez, and adding tortious breach of the covenant of good faith and fair dealing and fraudulent misrepresentation claims against Lopez, as well as unjust enrichment and conversion claims against Aster.

Sierra Southwest was served with the Amended Counterclaim on September 16, 2011.  (Proof of Serv. (Doc. #44).)  Sierra Southwest's answer or other responsive paper therefore was due on October 7, 2011.  However, Sierra Southwest did not respond until October 14, 2011, when it filed the Motion to Dismiss (Doc. #56) presently pending before the Court.  In its Motion, Sierra Southwest argues that although Lopez denominates his claims against Sierra Southwest as counterclaims, Lopez really is bringing a third party complaint against Sierra Southwest.  Sierra Southwest contends that because Lopez does not assert indemnity or contribution claims against Sierra Southwest, Lopez cannot bring a third party complaint against it.  Alternatively, Sierra Southwest argues Lopez lacks standing to assert claims for unjust enrichment, injunctive relief, and conversion against Sierra Southwest because the Amended Counterclaim alleges Russo misappropriated corporate assets of Sierra Metals or Sierra Construction, not assets individually owned by Lopez.

Lopez responds by moving to strike Sierra Southwest's Motion as untimely, or alternatively, to require Sierra Southwest to answer the Amended Counterclaim within seven days.  On the merits, Lopez argues that Sierra Southwest was joined as a necessary party, not as a defendant in a third party complaint, and thus Lopez may assert claims other than indemnity or contribution.  Lopez also argues that his Amended Counterclaim

1 adequately alleges Sierra Southwest received Lopez's property.  However, in the event the
2 Court grants Sierra Southwest's Motion, Lopez's company, Aster, moves to dismiss
3 Russo's Amended Complaint against it on the same grounds.  In response to Aster's
4 Motion, Russo agrees that if the Court dismisses Sierra Southwest, it likewise should
5 dismiss Aster.

**II.  MOTION TO STRIKE**

The Court will deny Lopez's Motion to Strike.  Although Sierra Southwest provides no explanation for its untimely filing, Sierra Southwest argues that Lopez lacks individual standing to assert claims against Sierra Southwest, an argument which implicates this Court's subject matter jurisdiction.  See RK Ventures, Inc. v. City of Seattle, 307 F.3d 1045, 1057 (9th Cir. 2002) (evaluating whether shareholder stated injury to himself independent of injury to corporation sufficient to support Article III standing).  Lopez agrees that default would be too harsh a remedy for Sierra Southwest's failure to file a responsive document until seven days after the deadline, but requests the Court order Sierra Southwest to file an answer to the Amended Counterclaim.  (Def.'s Reply in Support of Mot. to Strike (Doc. #76) at 2.)  However, the Court must resolve the jurisdictional question at the outset.

**III.  MOTIONS TO DISMISS**

In considering a motion to dismiss, "all well-pleaded allegations of material fact are taken as true and construed in a light most favorable to the non-moving party."  Wyler Summit P'ship v. Turner Broad. Sys., Inc., 135 F.3d 658, 661 (9th Cir. 1998).  However, the Court does not necessarily assume the truth of legal conclusions merely because they are cast in the form of factual allegations in the plaintiff's complaint.  See Clegg v. Cult Awareness Network, 18 F.3d 752, 754-55 (9th Cir. 1994).  There is a strong presumption against dismissing an action for failure to state a claim.  Ileto v. Glock Inc., 349 F.3d 1191, 1200 (9th Cir. 2003).  A plaintiff must make sufficient factual allegations to establish a

plausible entitlement to relief. Bell Atl. Corp. v Twombly, 550 U.S. 544, 556 (2007). Such allegations must amount to "more than labels and conclusions, [or] a formulaic recitation of the elements of a cause of action." Id. at 555.

As a general rule, a corporation is a separate legal entity from its shareholders, and thus "injury to the corporation is not cognizable as injury to the shareholders, for purposes of the standing requirements." RK Ventures, Inc., 307 F.3d at 1057; LFC Mktg. Grp., Inc. v. Loomis, 8 P.3d 841, 845 (Nev. 2000). Corporate shareholders--

> do not directly own any part of a corporation's property or assets. They only own shares of stock, which represent a proportionate interest in the corporate equity remaining after a corporation meets all its other debts and obligations. The profits themselves belong to the corporation, and do not pass to the shareholders unless and until the board of directors declares a dividend.

Broad v. Sealaska Corp., 85 F.3d 422, 430 (9th Cir. 1996).

Lopez's factual allegations state that Sierra Southwest appropriated the corporate assets of Sierra Metals and Sierra Construction, not Lopez's individual property. For example, Lopez alleges Sierra Southwest "improperly used or converted the assets and resources belonging to Sierra Metals, Inc." (Am. Countercl. at ¶ 4.)[1] When Lopez alleges injury to himself, he does so in a conclusory or derivative fashion. Lopez's unjust enrichment claim in count five alleges Sierra Southwest "obtained the sole possession of the benefit of monies, assets, and/or

---

[1] See also id. at ¶¶ 39-46 (alleging Russo withdrew $100,000 from Sierra Metal's bank account), ¶ 51 ("Russo has engaged in various other acts of misappropriation of corporate funds for his personal benefit or for the benefit of companies related to Russo, including . . . Sierra Metals Southwest, LLC."), ¶ 59 (alleging Russo "used employees of Sierra Metals to do work for the benefit of other companies and entities"), ¶ 61 (alleging Russo used "the name and resources of Sierra Metals"), ¶ 62 (alleging Russo commingled Sierra Metals' assets and resources with Sierra Southwest), ¶ 64 (alleging Russo used Sierra Metals' name and goodwill), ¶ 66 (alleging Sierra Southwest has "taken the assets and resources of Sierra Metals and Sierra Construction, including funds, personnel, computer resources, employee time, independent contractors, office space, business goodwill, reputation, and trade name" and that Sierra Southwest "'transferred' jobs belonging to Sierra Metals from the accounting records of Sierra Metals to the accounting records of Sierra Southwest.").

resources which otherwise would have and should have been shared with Lopez." (Id. ¶¶ 102-03.) This fails to state an unjust enrichment claim because none of Lopez's factual allegations support the essential element that Lopez individually, as opposed to Sierra Metals or Sierra Construction, conferred a benefit on Sierra Southwest.  See Topaz Mut. Co. v. Marsh, 839 P.2d 606, 613 (Nev. 1992).

Likewise, in count seven Lopez seeks injunctive relief against Sierra Southwest because Sierra Southwest has and continues "to withdraw money which should either be used to pay creditors and vendors of Sierra Metals and Sierra Construction and/or which should be paid to Lopez." (Am. Countercl. at ¶ 113.)  In further support of this claim, Lopez alleges Sierra Southwest has and continues to use "the assets and resources of Sierra Metals and Sierra Construction." (Id. at ¶ 114.)  The injunctive relief Lopez requests is intended to prevent Sierra Southwest "from withdrawing any additional monies from Sierra Metals or Sierra Construction" and to prevent Sierra Southwest "from using the assets and resources of Sierra Metals and Sierra Construction." (Id. at ¶ 115.)  Lopez's request for injunctive relief thus seeks to prevent Sierra Southwest from taking or using property belonging to Sierra Metals or Sierra Construction, not Lopez individually.

Finally, Lopez's conversion claim in count nine alleges Sierra Southwest has "taken sole possession of the benefit of monies, assets, and/or resources which otherwise would and should have been paid to Lopez," and Sierra Southwest has no right to possess "the benefit of monies, assets, and/or resources previously identified." (Id. at ¶¶ 126-27.)  As the monies, assets, and resources previously identified in the factual allegations were the corporate assets of Sierra Metals and Sierra Construction, not Lopez's individual property, Lopez fails to state a claim for conversion.  Boorman v. Nev. Mem'l Cremation Soc., 236 P.3d 4, 9 (Nev. 2010) ("Conversion is defined as a distinct act of dominion wrongfully exerted over another's personal property in denial of, or inconsistent with his title or rights therein or in derogation, exclusion, or defiance of such title or rights." (quotation omitted)).

Lopez lacks standing as a shareholder to assert claims for unjust enrichment, injunctive relief, or conversion to remedy the alleged injuries to the corporate entities, and his allegations that he has been harmed individually are conclusory and without factual support. The Court therefore will grant Sierra Southwest's Motion, without prejudice to amend within thirty days if Lopez can allege injury to himself individually.[2]

The parties agree that if the Court grants Sierra Southwest's Motion, the Court likewise should grant Aster's Motion. Russo's Amended Complaint suffers from the same deficiencies with respect to Aster as those identified above regarding Lopez's claims against Sierra Southwest. (Am. Compl. (Doc. #45) at ¶¶ 34, 36, 38, 39, 75, 78-79, 109-10.) The Court therefore will grant Aster's Motion, without prejudice to amend within thirty days if Russo can allege injury to himself individually.

**IV. CONCLUSION**

IT IS THEREFORE ORDERED that Sierra Metals Southwest, LLC's Motion to Dismiss Lopez's Third-Party Complaint (Doc. #56) is hereby GRANTED, without prejudice to amend within thirty days of the date of this Order.

IT IS FURTHER ORDERED that Joseph Lopez's Motion to Strike Sierra Metals Southwest, LLC's Motion to Dismiss (Doc. #61) is hereby DENIED.

///
///
///
///

---

[2] Sierra Southwest argues that Federal Rule of Civil Procedure 14 governs its joinder in this case. To the extent that argument would make amendment futile because Lopez does not seek contribution or indemnification from Sierra Southwest as required for a third party complaint under Rule 14(a)(1), Sierra Southwest is incorrect. Sierra Southwest was joined in this action as a required party under Rule 19, not Rule 14. (Order (Doc. #38).) Pursuant to Rule 19(a)(2), the Court may join a required party as either a plaintiff, a defendant, or an involuntary plaintiff.

IT IS FURTHER ORDERED that Defendant Aster Elements, Inc.'s Motion to Dismiss the Amended Complaint of Plaintiff Andy Russo (Doc. #62) is hereby GRANTED, without prejudice to amend within thirty days of the date of this Order.

DATED: March 12, 2012

_____
PHILIP M. PRO
United States District Judge